IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KASSA MENGITSU | ) |
| | ) |
| v. | ) NO. 3:10-0856 |
| | ) |
| BANK OF AMERICA, N.A. | ) |

TO: Honorable Todd J. Campbell, District Judge

# R E P O R T   A N D   R E C O M M E N D A T I O N

By Order entered November 9, 2010 (Docket Entry No. 15), the Court referred this action to the Magistrate Judge, pursuant to Rule 72 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 636(b)(1)(A) and (B), for entry of a scheduling order and for pretrial proceedings.

Presently pending before the Court is the Motion for Summary Judgment (Docket Entry No. 74) filed by Defendant Bank of America, N.A.. Also before the Court are the plaintiff's filings in opposition to the motion (Docket Entry Nos. 82-84, 92, and 94-95) and the Defendant's reply. See Docket Entry No. 90. Set out below is the Court recommendation for disposition of the motion.

## I. BACKGROUND

The plaintiff, Kassa Mengistu, is a resident of Nolensville, Tennessee, and he proceeds pro se in this action. Bank of America, N.A. ("BANA"), as a successor-by-merger, owns the mortgage to the plaintiff's house in Nolensville. During March of 2010, the plaintiff met with the Neighborhood Assistance Corporation of America ("NACA"), a non-profit community assistance organization, about options for lowering his monthly mortgage payments to BANA on his fixed rate

mortgage. However, because the plaintiff was not in default or imminent danger of default on his mortgage, his application for a loan modification through the federal Home Affordable Modification Program ("HAMP") was declined.

Despite the loss of his job in April, his financial difficulties, and his inability to obtain a loan modification[1], the plaintiff nonetheless continued to make his monthly mortgage payments to BANA. For the months of April through August of 2010, he made his payments by going to a BANA banking location, tendering a check, and receiving a receipt for his payment. See Attachments to Complaint (Docket Entry No. 1-1), at 15. For reasons that are unclear from the record before the Court, BANA did not apply the plaintiff's mortgage payments for May, July, or August of 2010, to his mortgage balance although it accepted his payments. BANA does not dispute that the plaintiff made the payments as he asserts. See Affidavit of Kristen Kesselman (Docket Entry No. 74-1).

Because BANA did not credit the plaintiff's payments, he began to experience a myriad of problems which made him quite understandably frustrated and aggravated considering that he had made timely monthly mortgage payments. He received notices from BANA that his home loan payments were past due and that foreclosure or collection efforts could be initiated, see Attachments to Complaint (Docket Entry No. 1-1), at 7; Docket Entry No. 82-1, at 13, and he has continued to receive statements which show a past due amount, as well as the assessment of late charges and fees. See Docket Entry No. 92-1, at 1-28. He also received numerous notices from BANA of its intent to accelerate the loan because the loan was viewed as being in default. Id. at 32-37. The plaintiff's homeowner's insurance was cancelled after BANA erroneously notified Travelers Indemnity, the plaintiff's homeowner's insurance carrier, that his house was vacant. See Docket Entry No. 82-1, at

---

[1] The plaintiff's second application for loan modification was denied later that year and he withdrew from the loan modification program in the fall of 2010.

2

33-34 and 38. The plaintiff may have also continued to pay private mortgage insurance for longer than is normally required because BANA viewed his account as showing that he had made late mortgage payments. See Docket Entry No. 94-1. He also asserts that his current monthly mortgage payment has increased by several hundred dollars for reasons that are unclear to him. See Docket Entry No. 82, at 10. The plaintiff contends that his efforts to obtain relief from BANA through letters and hours of telephone calls to BANA representatives have been fruitless.

BANA also provided information to TransUnion, a credit reporting agency, that the plaintiff had two mortgage payments that were past due. See Attachments to Complaint (Docket Entry No. 1-1), at 9. The plaintiff disputed this information with TransUnion but the credit reporting agency responded by stating that the information had been verified and no change would be made. Id. at 8. The plaintiff contends that the erroneous information contained in his credit report caused his credit score to be adversely affected resulting in decreased credit limits on credit accounts which he had, the cancellation of a credit account, and the denial of an application for a new credit card. See Docket Entry Nol 82-1, at 24-27. He also asserts that he was disqualified from applying for certain jobs which required that he have a clean credit report.

On September 10, 2010, the plaintiff filed the instant pro se action against BANA contending that:

1. Defendant destroyed my credit history;

2. Defendant denied my mortgage payment;

3. Defendant spread wrong information about my mortgage payment;

4. Defendant forced me to withdraw from modification program;

5. Defendant threatened me that I will lose my house.

3

See Complaint, at 2. In his claims for relief, the plaintiff primarily seeks "justice," but a liberal construction of his pleadings is that he requests damages and injunctive relief.

Nearly the first year of this litigation was devoted to the pro se plaintiff's attempts to serve BANA and resolving BANA's two motions (Docket Entry Nos. 29 and 40) to dismiss the action because of ineffective or improper service of process. See Orders entered May 2, 2011 (Docket Entry No. 34); June 24, 2011 (Docket Entry No. 45); August 3, 2011 (Docket Entry No. 53); and August 17, 2011 (Docket Entry No. 58). Upon BANA's filing of an answer (Docket Entry No. 52), a scheduling order was entered. See Docket Entry No. 54.

## II. MOTION FOR SUMMARY JUDGMENT

Although the plaintiff does not set out clearly identifiable causes of action, BANA views the complaint as setting forth five cause of action: 1) a claim under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. ("FCRA"); 2) a state law claim for unjust enrichment; 3) a state law claim for libel; 4) a claim under HAMP; and 5) a state law claim for intentional infliction of emotional distress. See Memorandum in Support (Docket Entry No. 75), at 4.

BANA argues that it is entitled to summary judgment because there are no genuine issues of material fact that: 1) the plaintiff cannot prove any claim against BANA under the FCRA; 2) BANA has not been unjustly enriched because the plaintiff only paid the monthly amounts due under his mortgage agreement; 3) the plaintiff's claim for libel is preempted by the FCRA; 4) the plaintiff cannot prove any claim against BANA under the HAMP; and 5) the plaintiff's allegation that he was "threatened" with foreclosure is insufficient for a claim of intentional infliction of emotional distress. See Motion for Summary Judgment (Docket Entry No. 74), at 1. In support of its motion, BANA relies on the Affidavit of Kristen Kesselman, an Assistant Vice President/Operations Team Lead at

4

BANA (Docket Entry No. 74-1), excerpts from the plaintiff's deposition (Docket Entry No. 74-2), and the plaintiff's Responses to BANA's Interrogatories (Docket Entry No. 74-3).

### III. STANDARD OF REVIEW

A motion for summary judgment is reviewed under the standard that summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." Sowards v. Loudon Cnty., 203 F.3d 426, 431 (6th Cir.), cert. denied, 531 U.S. 875, 121 S.Ct. 179, 148 L.Ed.2d 123 (2000). In reviewing a motion for summary judgment, the Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Gribcheck v. Runyon, 245 F.3d 547, 550 (6th Cir.), cert. denied, 534 U.S. 896, 122 S.Ct. 217, 151 L.Ed.2d 155 (2001).

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. Anderson, at 249-50. However, "[t]he moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that 'there is an absence of evidence to support the non-moving

5

party's case.'" Hayes v. Equitable Energy Res. Co., 266 F.3d 560, 566 (6th Cir. 2001) (quoting Celotex Corp., 477 U.S. at 325).

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." Goins v. Clorox Co., 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. Banks v. Wolfe Cnty. Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. Bell v. Ohio State Univ., 351 F.3d 240, 247 (6th Cir. 2003) (quoting Anderson, 477 U.S. at 252).

## IV. CONCLUSIONS

A. FCRA Claim

The plaintiff alleges that Defendant BANA "destroyed my credit history" see Complaint (Docket Entry No. 1) , at 2, and "gave wrong information to the credit [bureau]." See Attachments to Complaint (Docket Entry No. 1-1, at 2. Although the plaintiff does not refer to the Fair Credit Reporting Act in his complaint or in any of his other filings, his allegations can liberally be construed as asserting a claim under this Act in light of the Act's overall regulation of the collection, reporting, and dissemination of consumer credit information.

6

However, although 15 U.S.C. § 1681s–2(a) imposes duties on a furnisher[2] of credit information related to the accuracy of the information the furnisher provides to a consumer reporting agency ("CRA"), there is no private cause of action for violations of these duties even if the information provided is inaccurate. See Bach v. First Union Nat. Bank, 149 Fed.Appx. 354, 359 (6th Cir. Aug. 22, 2005); Burgess v. Capital One Bank (USA), N.A., 2010 WL 1752028, *1 (M.D.Tenn. Apr. 30, 2010) (Haynes, J.); Westbrooks v. Fifth Third Bank, 2005 WL 3240614, *3 (M.D.Tenn. Nov. 30, 2005) (Campbell, J.). The FCRA limits enforcement of these duties exclusively to "Federal agencies and officials and . . . State officials . . . ." 15 U.S.C. § 1681s–2(d).

Accordingly, the plaintiff's claim against BANA under the FCRA must be viewed as one asserting that BANA violated 15 U.S.C. § 1681s–2(b), which imposes upon furnishers[3] of information investigative duties upon receiving notice "of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency . . . ." 15 U.S.C. § 1681s–2(b)(1). These duties involve: 1) investigating the veracity of the disputed information; 2) reviewing the information provided by the credit reporting agency; 3) reporting the results of the investigation; and 4) correcting any inaccuracies uncovered by the investigation. 15 U.S.C. § 1681s–2(b)(1)(A)–(D). There is a private right of action under this subsection. See Bach v. First Union Nat'l Bank, 149 Fed.Appx. 354, 359, 2005 WL 2009272 (6th Cir. Aug. 22, 2005); Stafford

---

[2] As one of its arguments for dismissal of the plaintiff's claims, Defendant BANA argues that the plaintiff cannot show that BANA is a consumer reporting agency under the FCRA. See Memorandum in Support (Docket Entry No. 75, at 7-8. The plaintiff's allegations, even with a liberal construction, do not cast Defendant BANA in the role of a consumer reporting agency. Accordingly, the Court does not view his allegations as raising such a claim against the defendant and shall not address Defendant BANA's arguments in this regard.

[3] A "furnisher of information" is "an entity . . . which transmits information concerning a particular debt owed by a particular consumer to consumer reporting agencies . . ." See Carney v. Experian Info. Solutions, Inc., 57 F.Supp.2d 496, 501 (W.D. Tenn. 1999). Defendant BANA does not contest that it is a furnisher of information under the FCRA.

v. Cross Country Bank, 262 F.Supp.2d 776, 782–83 (W.D.Ky. 2003). To succeed on a Section 1681s-2(b) claim, the plaintiff must set forth evidence showing: 1) that the duties under Section 1681s-2(b) were triggered by the furnisher's receipt of notice from a consumer reporting agency that credit information is disputed by the plaintiff; and 2) that the furnisher did not comply with the statutorily required duties. See Downs v. Clayton Homes, Inc., 88 Fed. Appx. 851, 853-54, 2004 WL 253363 (6th Cir. Feb. 9, 2004); Burgess, 2010 WL 1752028 at *2.

As to the first requirement, Defendant BANA asserts that the plaintiff fails to show that it received notice of a dispute from a consumer reporting agency, as opposed to receiving notices from the plaintiff made directly to BANA, which is not sufficient to trigger duties under Section 1681s-2(b). Although the Court agrees that the pro se plaintiff has not set forth evidence in this regard, it is nonetheless apparent that the plaintiff provided notice of a dispute to TransUnion. See Attachments to Complaint (Docket Entry No. 1-1), at 8. 15 U.S.C. § 1681i(a)(2) requires that a consumer reporting agency provide notification of a dispute to the furnisher of information within five days of the consumer reporting agency's receiving notice of the dispute. Thus, it is reasonable to infer that TransUnion provided notification to BANA. Additionally, Defendant BANA does not affirmatively state that it did not receive notice of the dispute from TransUnion, see Affidavit of Kesselman (Docket Entry No. 74-1), even though it is in a position to either dispute or acknowledge this fact. As a result, the Court finds that the plaintiff has sufficiently raised a disputed factual issue on this matter, and that Defendant BANA is not entitled to summary judgment on the plaintiff's FCRA claim based the first requirement of Section 1681s-2(b).

However, as to the second requirement, the Court agrees that the plaintiff has not set forth any evidence showing that BANA failed to comply with its duties under Section 1681s-2(b). Further, the Court finds no evidence in the record before the Court that, even in recognition of the plaintiff's pro

8

se status, can be viewed as supporting such a showing or even raising a genuine issue of material fact on this issue. In short, there is a complete dearth of any evidence that would support such a claim. In light of this lack of evidence, there is no basis upon which this claim should be submitted to the trier of fact for resolution at trial. Accordingly, summary judgment should be granted to Defendant BANA on the plaintiff's FCRA claim.

To the extent that the plaintiff's allegations can be construed as asserting a claim that Defendant BANA violated any statutory duties as a user of a consumer report, the Court also finds that summary judgment should be granted to BANA for the reasons set out in its motion. See Memorandum in Support (Docket Entry No. 75), at 8-10. The letters sent to the plaintiff from BANA on August 17, 2010, and September 18, 2011, regarding his credit line with BANA complied with the obligations imposed on users of consumer reports under 15 U.S.C. § 1681m to inform the plaintiff of adverse action taken based on information contained in a consumer report and to provide the name, address, and telephone number of the consumer reporting agency that furnished the report. There is no evidence in the record supporting a FCRA claim against BANA as a user of a consumer report.

B. Unjust Enrichment Claim

Defendant BANA has construed the plaintiff's claim that BANA "denied my mortgage payment" as a claim for unjust enrichment under Tennessee law. Presuming for the purposes of resolving defendant BANA's motion that this is a claim alleged by the plaintiff,[4] the Court does not agree that summary judgment is warranted on this claim because genuine issues of material fact exist.

---

[4] Because the plaintiff's mortgage payments were presumably made to BANA pursuant to the terms of a contractual agreement between the plaintiff and BANA, another reasonable construction is that he asserts a claim for breach of contract. Because BANA has not sought summary judgment on this claim, the Court declines to address such a claim.

9

The elements of an unjust enrichment claim under Tennessee are: 1) a benefit conferred upon the defendant by the plaintiff; 2) appreciation by the defendant of such benefit; and 3) acceptance of such benefit under such circumstances that it would be inequitable for him or her to retain the benefit without payment of the value thereof. Freeman Indus., LLC v. Eastman Chem. Co., 172 S.W.3d 512, 525 (Tenn. 2005). See also U.S. v. Goforth, 465 F.3d 730, 733-34 (6th Cir. 2006); Perry v. The American Tobacco Co., Inc., 324 F.3d 845, 851 (6th Cir. 2003).

Defendant BANA argues that summary judgment is warranted in its favor on this claim because the plaintiff "did not pay and BANA did not receive more than the monthly mortgage payments due for May through August 2010" and BANA received no benefit from the plaintiff other than what the plaintiff owed. See Memorandum in Support (Docket Entry No. 75), at 13. As noted in Section I, supra, there is information in the record showing that the plaintiff was assessed late charges and other fees because of the mistake made by BANA regarding the plaintiff's mortgage payments, that his mortgage payment has increased from the amount it was prior to the mistake made by BANA, and that the plaintiff paid private mortgage insurance longer than he would have paid it had the mistake by BANA not been made. It is certainly not clear to the Court that BANA has not appreciated some measure of benefit from the plaintiff because of the mistake it made, and, under the circumstances of this case, it would not be equitable for BANA to have retained any such benefit given the plaintiff's apparent lack of fault in this matter. At the very least, the Court finds that there are genuine issues of material fact on this claim.

C. Libel Claim

The plaintiff's allegation that BANA "spread wrong information about my mortgage payment" most closely resembles a claim for libel under state law. BANA argues that any claim for libel

10

against it based on information about the plaintiff's mortgage payment history that it furnished to a consumer reporting agency is preempted by the provisions of the FCRA. See Docket Entry No. 75, at 13-16.

The Court agrees. The plaintiff's libel claim against BANA based on allegations that BANA provided incorrect information to a consumer reporting agency clearly pertains to the subject matter regulated under Section 1681s-2, i.e., the furnishing of information to a consumer reporting agency. Because such a libel claim directly concerns "the responsibilities of persons who furnish information to consumer reporting agencies," it is preempted by Section 1681t(b)(1)(F)[5] of the FCRA. See Westbrooks v. Fifth Third Bank, 2005 WL 3240614, *7 (M.D. Tenn. Nov. 30, 2005) (Campbell, J.) (defamation claim against a bank for allegedly publishing false representations about mortgage payments to consumer reporting agencies was preempted by the FCRA). Accordingly, Defendant BANA is entitled to summary judgment as a matter of law on the plaintiff's libel claim based on allegations that BANA provided incorrect information to a consumer reporting agency.

The Court finds that the plaintiff's allegations, however, also encompass a second libel claim based on an allegation that BANA informed the plaintiff's homeowner's insurance company that his house was vacant, leading to the cancellation of the plaintiff's homeowner's insurance and, as the plaintiff apparently alleges, a resulting higher insurance premium than the plaintiff paid prior to BANA providing the erroneous information. This claim is not preempted by the FCRA, and

---

[5] Section 1681t(b)(1)F) provides that:
No requirement or prohibition may be imposed under the laws of any State–
(1) with respect to the subject matter regulated under–
. . .
(b) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies....

15 U.S.C. § 1681t(b)(1)(F).

Defendant BANA did not argue that it should be dismissed. Accordingly, summary judgment is not warranted on this claim.

D. HAMP Claim

The federal courts who have reviewed actions involving the Homeowners Affordable Modification Program ("HAMP"), have uniformly concluded that HAMP does not contain a private right of action. See Grona v. CitiMortgage, Inc., 2012 WL 1108117 at * 5 (M.D.Tenn. April 2, 2012) (Campbell, J.); JP Morgan Chase Bank v. Horvath, 2012 WL 995397 at *2 (S.D.Ohio March 23, 2012) (collecting cases). See also Cage v. Bank of America, 3-12-0108 (M.D. Tenn. April 5, 2012) (Nixon, J.). The plaintiff has not addressed any contrary cases holding that there is a private cause of action under HAMP. Accordingly, the plaintiff fails to assert a legal claim for relief based upon his allegations that he was wrongfully denied acceptance into or forced out of the loan modification program provided by HAMP, and any such claim should be dismissed as a matter of law.

E. Intentional Infliction of Emotional Distress Claim

To the extent that the plaintiff's allegations can be construed as asserting a claim for intentional infliction of emotional distress, the Court finds that summary judgment should be granted to BANA for the reasons set out in its motion. See Docket Entry No. 75, at 21. There is no evidence in the record supporting a conclusion that Defendant BANA's alleged actions were outrageous and resulted in serious mental injury to the plaintiff as is required for such a claim. See Bain v. Wells, 936 S.W.2d 618, 622 n. 3 (Tenn. 1997). See also MacDermid v. Discover Fin. Serv., 488 F.3d 721, 729 (6th Cir. 2007).

# R E C O M M E N D A T I O N

Accordingly, the Court respectfully RECOMMENDS that the motion for summary judgment (Docket Entry No. 74) of Defendant Bank of America, N.A., be:

1) GRANTED as to the plaintiff's claim under the Fair Credit Reporting Act, his claim under the HAMP Act, his state law claim of intentional infliction of emotional distress, and his state law libel claim based on information provided to consumer reporting agencies about the plaintiff's mortgage payment history and that these claims be DISMISSED from the action; and

2) be DENIED as to the plaintiff's state law claim for unjust enrichment and his state law claim for libel as to information provided to the plaintiff's homeowner's insurance provider.

If the Court adopts this Report and Recommendation and allows the plaintiff's claims to proceed as set out herein, the Court recommends that the plaintiff be granted leave to renew his previously filed motion for appointment of counsel (Docket Entry No. 63), and that, upon any such motion, counsel be appointed for the plaintiff for the remainder of this action.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

_____
JULIET GRIFFIN
United States Magistrate Judge